**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JASON A. DOTTS, III, | : | Civil Action No. 04-3020 (SRC) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| JOSH BARD, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Jason A. Dotts, III, Plaintiff pro se
191685C
137 Witmer Place
Long Branch, NJ 07740

RECEIVED
MAY 03 2005
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

**CHESLER**, District Judge

Plaintiff Jason A. Dotts, III, who was contined at Monmouth County Correctional Institution in Freehold, New Jersey at the time he submitted this Complaint, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

### I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

On May 28, 2004, Plaintiff was stopped on the street and arrested for robbery by Defendant Long Branch Police Officer Josh Bard. Plaintiff was taken to the Long Branch Police Department, where he was confined despite his protestation of innocence and his insistence that his innocence could be established if police would take his fingerprints and put him in a line-up. Plaintiff asserts that the charges against him are false and that his continued confinement is unlawful.

As of the date the Complaint was filed, Plaintiff was confined at the Monmouth County Correctional Institution.[1] It is not clear whether he was awaiting trial or had been convicted.

Plaintiff seeks compensatory damages and he states, further, that he wants to be released on his own recognizance and wants the charges against him dropped.

---

[1] It appears from Plaintiff's more recent filings that he has been released from confinement, although it remains unclear why he has been released, whether charges are still pending against him, whether he is still in "custody" within the meaning of 28 U.S.C. § 2254, or whether he has been convicted of any crimes in connection with the events described in the Complaint.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d

3

371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>. See <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990), <u>quoted in</u> <u>Blanche Rd. Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 269 n.16 (3d Cir.), <u>cert. denied</u>, 516

U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury.  Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).[2]

---

[2] As Plaintiff makes no allegation that the events that are the subject of this litigation resulted from any established policy or practice of the City of Long Branch Police Department, and § 1983 does not permit respondeat superior liability, the

## IV. ANALYSIS

A. False Arrest/False Imprisonment

The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated." A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983), quoted in Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor, 490 U.S. 386, 396 (1989).

It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from

---

claims against the City of Long Branch Police Department will be dismissed without prejudice.

7

unreasonable seizures). Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)).

To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman v. Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Palma v. Atlantic County, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)(citing Groman). See also Anela v. City of Wildwood, 595 F. Supp. 511, 512 (D.N.J. 1984)(holding a person for any length of time without legal justification may be a violation of the right to liberty under the Fourteenth Amendment and thus states a claim of false imprisonment under § 1983).[3] In contrast, an arrest based upon probable cause does not give rise to claims for false imprisonment or false arrest. Id.

---

[3] While "[a] false imprisonment claim under 42 U.S.C. § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law[,]" Baker v. McCollan, 443 U.S. 137, 142 (1979), the claim is derivative of a Fourth Amendment violation for arrest without probable cause. See Groman, 47 F.3d at 636.

8

In the instant action, Plaintiff alleges that he was arrested without probable cause on May 28, 2004. A § 1983 claim for false arrest accrues on the date of the plaintiff's arrest. See Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 348-51 (3d Cir. 1989). Thus, Plaintiff has stated a claim for false arrest and false imprisonment, sufficient to avoid dismissal at this preliminary stage of the litigation, and it appears to be ripe. This claim may proceed against Defendants Josh Bard and Frank T. Morey.

B.  Malicious Prosecution

In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F. Supp.2d 380, 393 (D.N.J. 1999). Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are: (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff. Lind v. Schmid, 67 N.J. 255, 262 (1975). A plaintiff attempting to state

a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent with the concept of seizure.'" Gallo, 161 F.3d at 222 (quoting Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995)); see Albright v. Oliver, 510 U.S. 266 (1994). Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding. Heck v. Humphrey, 512 U.S. 477, 489 (1994).

Here, Plaintiff has failed to allege a favorable termination of the criminal proceeding. Accordingly, this claim does not appear to have accrued and will be dismissed without prejudice.

C.   Continued Prosecution and Custody

To the extent Plaintiff seeks through an action in this Court to have charges pending in state court dropped, it is not generally the role of the federal courts to interfere in pending state judicial proceedings. A federal court must abstain from addressing requests for injunctive relief against state court proceedings so long as the constitutional issues involved may be addressed adequately in the course of the state proceedings. Younger v. Harris, 401 U.S. 37 (1971) (addressing abstention from state criminal proceedings); Middlesex Co. Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) ("The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state issues are involved."). The

10

United States Court of Appeals for the Third Circuit has enunciated three requirements that must be met before <u>Younger</u> abstention may be invoked:

> (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.  Whenever all three of these requirements are satisfied, abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently unconstitutional rule that will cause irreparable injury to the plaintiff.

<u>Port Auth. Police Benevolent Ass'n Inc. v. Port Auth. Of New York and New Jersey Police Dept.</u>, 973 F.2d 169, 173 (3d Cir. 1992) (citing <u>Schall v. Joyce</u>, 885 F.2d 101, 106 (3d Cir. 1989)).

Here, it is clear that state proceedings implicating important state interests are ongoing, and that Plaintiff has the opportunity to raise his claim in that proceeding.  Plaintiff has failed to plead any special circumstances that would take this case out of the <u>Younger</u> abstention doctrine.  Thus, Plaintiff must present his complaints about the pending charges against him to the court in which those charges are proceeding.  <u>See</u> <u>Roberts v. Childs</u>, 956 F.Supp. 923, 925 (D.Kan.), <u>aff'd</u>, 125 F.3d 862 (10th Cir. 1997).

To the extent Plaintiff challenges his continued custody, whether pre-trial or post-conviction, he can obtain relief only through a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, following exhaustion of his state-court remedies.

Accordingly, the challenge to his continued custody must be dismissed without prejudice.

## V. CONCLUSION

For the reasons set forth above, the false arrest and false imprisonment charges will be permitted to proceed against Defendants Josh Bard and Frank T. Morey. All other claims will be dismissed. However, the Court will grant Plaintiff leave to file an amended complaint.[4] An appropriate order follows.

Stanley R. Chesler
United States District Judge

Dated: 5/2/05

---

[4] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.